[Cite as *State v. Adams*, 2012-Ohio-5979.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.   12 MA 9 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| DAVID ADAMS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:      Criminal Appeal from Common Pleas
                                                    Court, Case No. 09CR1282.

JUDGMENT:                                  Judgment Reversed; Plea Vacated;
                                                    Case Remanded.


APPEARANCES:
For Plaintiff-Appellee:                     Attorney Paul Gains
                                                    Prosecuting Attorney
                                                    Attorney Ralph Rivera
                                                    Assistant Prosecuting Attorney
                                                    21 West Boardman Street, 6th Floor
                                                    Youngstown, Ohio  44503


For Defendant-Appellant:               Attorney J. Dean Carro
                                                    Director, Legal Clinic
                                                    University of Akron School of Law
                                                    Office of Appellate Review
                                                    Akron, Ohio  44325-2901


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                                    Dated:  December 14, 2012

[Cite as *State v. Adams*, 2012-Ohio-5979.]

VUKOVICH, J.

{¶1} Defendant-appellant David Adams appeals the decision of the Mahoning County Common Pleas Court denying his motion to vacate his *Alford* Plea. The issue in this appeal is whether the trial court abused its discretion in denying the pre-sentence motion to withdraw a plea. For the reasons expressed below, we find that the trial court did abuse its discretion. Thus, the judgment of the trial court is reversed, the plea is vacated, and the case is remanded for further proceedings.

STATEMENT OF THE CASE

{¶2} In November 2009, Adams was indicted for eight counts of rape, violations of R.C. 2907.02(A)(2)(B), first-degree felonies. In October 2011, a couple days prior to trial, the state and Adams reached a plea agreement; Adams entered an *Alford* Plea to all eight counts and the state agreed to recommend an aggregate sentence of 15 years. 10/24/11 Hearing; 10/26/11 *Alford* Plea Agreement. After a plea colloquy, the trial court accepted the *Alford* Plea.

{¶3} A little over two weeks later Adams filed a pre-sentence motion to vacate the *Alford* Plea. He contended that he did not have enough time to think about the plea and that after entering the plea he was "publicly humiliated by the Vindicator and other published entities." 11/14/11 Motion. The state filed a motion in opposition claiming that the victim was comforted by the plea agreement knowing that she would not be subject to reliving the abuse through her testimony, negotiations had been ongoing for two years and defense counsel got the state to reduce the recommendation from 25 years to 15 years. The state claimed that Adams was just having a change of heart. 11/18/11 Motion. Following a hearing, the trial court overruled the motion to vacate the plea. 11/20/11 J.E.; 11/22/11 Hearing. Thereafter, Adams filed a motion for reconsideration, which the trial court denied. 12/1/11 Motion; 12/2/11 J.E.

{¶4} The case proceeded to sentencing. Adams received an aggregate sentence of 15 years. 12/22/11 J.E. He received three years on each of the eight

counts. The first five counts were ordered to be served consecutively, while counts six through eight were ordered to be served concurrently. 12/22/11 J.E.

**{¶5}** Adams has filed a timely appeal.

<u>ASSIGNMENT OF ERROR</u>

**{¶6}** "The trial court abused its discretion when it overruled appellant Adams' presentence motion to withdraw his *Alford* Plea in violation of *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992) and Crim.R. 32.1."

**{¶7}** Crim.R. 32.1, which governs the withdrawal of a guilty plea, provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." This rule establishes a fairly strict standard for deciding a post-sentence motion to withdraw a guilty plea, but provides no guidelines for deciding a pre-sentence motion. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992).

**{¶8}** That said, the Ohio Supreme Court has stated that pre-sentence motions to withdraw a guilty plea "should be freely and liberally granted." *Id.* at 584. That does not mean, however, that a defendant has an absolute right to withdraw a guilty plea prior to sentencing. *Id.* at paragraph one of the syllabus. There must be "a reasonable and legitimate basis for withdrawal of the plea." *Id.*

**{¶9}** The decision to grant or deny a pre-sentence plea withdrawal motion is within the trial court's sound discretion. *Id.* at 526. Unless it is shown that the trial court acted unfairly or unjustly, there has not been an abuse of discretion. *Id.* at 526.

**{¶10}** The factors to be considered when making a decision on a motion to withdraw a guilty plea are as follows: (1) prejudice to the state; (2) counsel's representation; (3) adequacy of the Crim.R. 11 plea hearing; (4) extent of the plea withdrawal hearing; (5) whether the trial court gave full and fair consideration to the motion; (6) timing; (7) the reasons for the motion; (8) the defendant's understanding of the nature of the charges and the potential sentences; and (9) whether the defendant was perhaps not guilty or has a complete defense to the charge. *State v. Cuthbertson,* 139 Ohio App.3d 895, 898–899, 746 N.E.2d 197 (7th Dist.2000), citing

*State v. Fish,* 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist.1995). We have previously explained that no one *Fish* factor is absolutely conclusive. *Cuthbertson* at 899.

{¶11} The transcript of the plea withdrawal hearing indicates that the trial court did consider the *Fish* factors prior to making its decision. 11/22/11 Tr. 23-38. Furthermore, the judgment entry details consideration of the *Fish* factors. 11/30/11 J.E.

{¶12} The trial court found that the state would be prejudiced by the delay, which is the first factor. The record indicates that one of the state's witnesses was retired Detective Ray Holmes. The state informed the court that Detective Holmes would be unavailable to testify if the trial was scheduled for December 12, 2011. 11/30/11 J.E. The court also confirmed this with Detective Holmes. 12/2/11 Tr. 15.

{¶13} Adams disagrees with that determination and argues the state has not shown Detective Holmes' unavailability or that it would be prejudiced by his unavailability. He even argues that the trial could have been rescheduled to a date when Detective Holmes was available.

{¶14} The first available date to have the trial following the November 22, 2011 motion to withdraw the plea hearing was December 12, 2011. The record indicates that Detective Holmes was unavailable because he would be on vacation on December 12, 2011. The record also indicates that Detective Holmes was scheduled to testify at the trial that was scheduled to start on the date the plea was accepted and that he was an investigator into the sex abuse.

{¶15} From the record before us, we cannot find that the trial court's decision that Detective Holmes was unavailable on December 12, 2011 and that the state would be prejudiced by his unavailability on that date if the trial was scheduled for that date was incorrect. For purposes of continuances, courts have held that continuances are not unreasonable when an officer is unavailable to testify based on a scheduled vacation and such time is not computed against the state. *State v. Kopchak*, 5th Dist. No. 06CA108, 2007-Ohio-4026, ¶ 35 (speedy trial time was tolled); *State v. Burdick*, 11th Dist. No. 98-G-2209 (May 26, 2000). *See also State v.*

*Berrien* CA2005-08-018, 2006-Ohio-4563, ¶ 30 (key witness unavailable due to vacation). Consequently, it would appear that even for purposes of determining prejudice to the state if the motion to withdraw is granted, vacation would justify an unavailability finding.

**{¶16}** That said, while the state would have been prejudiced if trial was set for December 12, 2011, we must also address whether prejudice would have resulted if the trial could have been set for a later date when Detective Holmes was available to testify. At the November 22, 2011 Motion to Withdraw the Plea Hearing, the state indicated that if the trial court grants the request to withdraw the guilty plea that the trial be set for December 12, 2011, the earliest date available to defense and the court. 11/22/11 Tr. 20. It indicated that the case is over two years old and Adams had been out on bond for the past two years. 11/22/11 Tr. 20. The state was insinuating that Adams was just making further attempts to delay the proceedings. The state also asserted that one of Adams' attorneys would no longer be able to be his attorney in January and that by delaying the case beyond December 2011 would just cause further delay for a new attorney to catch up. 11/22/11 Tr. 21. Defense counsel appeared to agree with that conclusion. 11/22/11 Tr. 22-23.

**{¶17}** Despite their agreement, we do not find, given the record, that any delay beyond December 2011 would prejudice the state. While it may be true that one of Adams' defense counsel would no longer be able to be his counsel after December 2011, that does not necessarily result in a lengthy delay or prejudice the state. Adams was represented by two lawyers. Nothing in the record suggests that his other counsel could not defend him at trial. Thus, the delay may have only been for another month, until Detective Holmes was available to testify. Therefore, we disagree with the trial court's conclusion that the state would be prejudiced by a delay beyond December 2011. Consequently, for that reason we find that the first factor, prejudice to the state, weighs in Adams favor.

**{¶18}** The second *Fish* factor is defense counsel's representation. The trial court specifically found that Adams was adequately represented. 11/30/11 J.E.;

11/22/11 Tr. 31. Adams does not dispute this finding. And incidentally, from our review of the record, there appears to be effective representation.

**{¶19}** The third and eighth *Fish* factors are addressed together. Respectively they are the adequacy of the Crim.R. 11 plea hearing and the defendant's understanding of the nature of the charges and the potential sentences.

**{¶20}** Crim.R. 11(C) provides that a trial court must make certain advisements prior to accepting a defendant's guilty plea to ensure that the plea is entered into knowingly, intelligently and voluntarily. These advisements are typically divided into constitutional rights and nonconstitutional rights. The constitutional rights are: 1) a jury trial; 2) confrontation of witnesses against him; 3) the compulsory process for obtaining witnesses in his favor; 4) that the state must prove the defendant's guilt beyond a reasonable doubt at trial, and 5) that the defendant cannot be compelled to testify against himself. Crim.R. 11(C)(2)(c); *State v. Veney,* 120 Ohio St.3d 176, 2008–Ohio–5200, 897 N.E.2d 621, ¶ 19–21. The trial court must strictly comply with these requirements; if it fails to strictly comply, the defendant's plea is invalid. *Veney* at ¶ 31; *State v. Ballard,* 66 Ohio St.2d 473, 477, 423 N.E.2d 115 (1981).

**{¶21}** The nonconstitutional rights that the defendant must be informed of are: 1) the nature of the charges; 2) the maximum penalty involved, which includes, if applicable, an advisement on postrelease control; 3) if applicable, that the defendant is not eligible for probation or the imposition of community control sanctions, and 4) the effect of the plea and that after entering a guilty plea or a no contest plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2)(a)(b); *Veney* at ¶ 10–13; *State v. Sarkozy,* 117 Ohio St.3d 86, 2008–Ohio–509, 881 N.E.2d 1224, ¶ 19–26 (indicating that postrelease control is a nonconstitutional advisement). For the nonconstitutional rights, the trial court must substantially comply with Crim.R. 11's mandates. *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Veney* at ¶ 15, quoting *Nero* at 108. Furthermore, a defendant who challenges his guilty plea on the basis that the advisement for the nonconstitutional

rights did not substantially comply with Crim.R. 11(C)(2)(a)(b) must also show a prejudicial effect, meaning the plea would not have been otherwise entered. *Veney* at ¶ 15, citing *Nero* at 108.

**{¶22}** The trial court's advisement on the constitutional rights strictly complied with Crim.R. 11(C)(2)(c). Adams was informed and indicated that he understood that by pleading guilty he was waiving his right to a jury trial, his right to confront witnesses against him, his right to subpoena witnesses in his favor, his right to have the state prove at trial each and every element of the offense of rape by proof beyond a reasonable doubt and his right to not testify at trial or any other proceeding. 10/25/11 Plea Tr. 6-9.

**{¶23}** As to the Crim.R. 11(C) advisement on the nonconstitutional rights, Adams was advised of the charge against him, rape. 10/25/11 Plea Tr. 7-8. He was correctly advised of the maximum penalty involved, 11 years in prison on each count, $25,000 fine on each count and he would be subject to a five year period of postrelease control. 10/25/11 Tr. 13-15. *See also* R.C. 2929.14(A)(1); R.C. 2929.18(A)(3)(a); R.C. 2967.28(B)(1). The trial court advised him that he is not eligible for a community control sanction and that prison is presumed necessary. 10/25/11 Plea Tr. 13.

**{¶24}** The trial court did not inform him that it could proceed immediately to sentencing after accepting the plea. But it did advise him that sentencing would not occur that day. 10/25/11 Tr. 14. Sentencing did occur at a later date. Thus, there is no prejudice in the failure to advise of the possibility of proceeding immediately to sentencing.

**{¶25}** The last advisement regards the nature of his plea. Adams did not enter a guilty plea. Rather, he entered an *Alford* plea. In an *Alford* plea, a defendant pleads guilty but maintains actual innocence to the charges. *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160. In *Alford,* the United States Supreme Court held that a plea of guilty may be accepted by the trial court despite the fact that the defendant maintains actual innocence of the charges. *Id.* at 37.

**{¶26}** The Ohio Supreme Court has applied *Alford* and has explained that:

> Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made.

*State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), syllabus.

**{¶27}** The majority of the arguments that Adams made in his motion to withdraw and at the withdrawal hearing concerned his understanding of an *Alford* plea. The plea transcript clearly indicates that he understood the nature of the *Alford* plea and chose to enter it.

> MR. DIXON (Counsel for Adams): Yes, it does, Your Honor. Obviously, my client contests the idea or notion that he had any sexual conduct with * * * [the victim]. On the other hand, he was facing basically the rest of his life in the penitentiary. Today the Prosecutor has agreed to make a recommendation, that these type of cases, by experience, has found that it's a reasonable recommendation, probably lower than they would recommend and definitely less than what they were talking about in years while going through trial preparations, Your Honor.

> So here we are on the eve of trial and we are prepared to go forward. And my client and I understand the risks involved in this particular case, and we examine it from head to toe and have advised him fully.

> He does wish to use the *Alford* plea, which is basically where somebody is saying the State or the government has offered me a Rule

11 agreement, that my counsel has explained to me that it is very much beneficial in my favor, and even though I did not commit these offenses, I know the risk I'm taking, I know that I don't want to take that risk, I do want to see the light of day and the concerns for his family and many other factors come into play.

\* \* \*

THE COURT: Do you also understand by entering this plea, you are saying, as counsel has very eloquently stated, that you are not admitting that you're guilty; however, you are acknowledging that if this case were to proceed to trial, that there would be sufficient evidence that would enable a jury to return a unanimous verdict of guilty as to these counts. That's kind of a two-part answer.

THE DEFENDANT: Yeah, you know –

THE COURT: The first part.

THE DEFENDANT: -- pertaining to that—

THE COURT: You're not admitting you're guilty.

THE DEFENDANT: Right, but –

\* \* \*

THE DEFENDANT: Yeah, I understand that, but there's – I'm not taking the plea because of the, you know – yes to that answer. The next question – I don't know how to state what I'm trying to say about it.

THE COURT: Well –

MR. DIXON: Well, I think for the record, Your Honor, what Mr. Adams is saying is that he understands that the State could prove

through evidence sufficient for him to be found guilty at the trial. It's one of the things that we discussed was the risk, that the State could produce evidence that could very well result in his being found guilty at trial.

THE DEFENDANT: It's part of my –

MR. DIXON: Yeah. And he also understands that we could have lost at trial. Is that correct; David [Mr. Adams]?

THE DEFENDANT: Yes.

* * *

THE COURT: So I'm going to ask it again –

THE DEFENDANT: Okay.

THE COURT: -- perhaps in a different way.

THE DEFENDANT: Okay.

THE COURT: You are not admitting that you are guilty, but if we brought a jury down and the Prosecutor presented their evidence and there was cross examination, if you had any witnesses that you wanted to call, all of the rights we've gone over, you are telling me that you understand that the jury, after listening to the evidence, could return a verdict of guilty, because if you don't believe they could, then I will bring the jury down right now.

Are you telling me, and you have to tell me, that you admit there's sufficient evidence that could return a verdict of guilty, and based upon that and based upon, quite frankly –

THE DEFENDANT: When you say could, my answer do [sic] that is yes.

THE COURT: All right.

THE DEFENDANT: Yes, sir.

THE COURT: And what you're doing is cutting your losses, quite frankly.

THE DEFENDANT: Yes, sir.

THE COURT: You are limiting the exposure, and that is what this is all about.

THE DEFENDANT: Yes, sir.

10/25/11 Tr. 3-5, 9-13.

**{¶28}** There were eight pages of dialog in the plea transcript that addressed the effect of the *Alford* plea. The plea transcript is 20 pages long. Thus, almost half of the plea hearing was a discussion of what an *Alford* plea is and the effect of that plea. The above excerpts indicate that Adams understood the nature of the *Alford* plea. Specifically, the record clearly shows that he had a desire to seek a lesser penalty while maintaining his innocence. The state was recommending an aggregate sentence of 15 years for the 8 counts of first degree rape. If he was convicted of these charges and the court sentenced him to maximum consecutive sentences he could receive a maximum sentence of 88 years in the penitentiary. By entering the *Alford* plea, he had a guarantee of a 15 year sentence; the trial court specifically stated at the plea hearing, prior to accepting the plea, that it would not sentence Adams to more than 15 years if he did not get into any trouble prior to sentencing. 10/25/11 Tr. 14.

**{¶29}** Consequently, the record clearly indicates that he understood the nature of the charges, the potential penalty and the effect of the *Alford* plea. Thus, these two factors weigh in the state's favor.

**{¶30}** The fourth and fifth *Fish* factors are the extent of the plea withdrawal hearing and whether the trial court gave full and fair consideration to the motion. The plea withdrawal hearing transcript is 38 pages long. Arguments are presented by both sides and the trial court clearly considered those arguments. The trial court complied with both of these requirements.

**{¶31}** The sixth *Fish* factor is timing. The trial court stated that the motion was timely. The record indicates that the motion was filed less than two weeks after entering the *Alford* plea. Thus, this factor weighs in Adams' favor.

**{¶32}** The seventh *Fish* factor is the reasons for the motion. In addition to the alleged reason that he did not understand the nature of the *Alford* plea, which is discussed in depth above, Adams also asserted that he did not have enough time to think about the plea and that after entering the plea he was "publicly humiliated by the Vindicator and other published entities." 11/14/11 Motion.

**{¶33}** The record does reveal that during the pendency of the trial court proceedings (2 years) there were plea negotiations. The state agreed that it would recommend 25 years if Adams pled to the crimes. The transcript on the motion to withdraw the *Alford* plea indicates that either on the morning of trial or the day before trial was scheduled to start there were plea negotiations and the state agreed to lower its recommendation to 15 years if Adams pled to the charges. 11/22/11 Plea Tr. 14, 17-18. The state indicated that there was a day and half of extensive negotiations. 11/22/11 Plea Tr. 17-18. Consequently, given that this occurred on the eve of trial, the maximum sentence (88 years) he was potentially facing if he did not accept the plea, and that there was not much time for discussion or thought, this factor weighs in Adams favor.

**{¶34}** The last *Fish* factor is whether the defendant was perhaps not guilty or has a complete defense to the charge. As stated above, in an *Alford* plea the defendant is maintaining his innocence. Thus, this factor weighs in Adams favor.

**{¶35}** Considering all the above, we find that the trial court abused its discretion when it did not grant the presentence motion to withdraw. The combination of the Ohio Supreme Court's advisement that pre-sentence motions to

withdraw should be freely and liberally be granted, that the state would not be prejudiced if a delay occurred beyond December 2011, that Adams only had at most a day to a day and a half to consider the plea before accepting it, and that by entering the *Alford* plea he has maintained his innocence to the charges throughout the proceedings, indicates that the plea should be withdrawn. Thus, the trial court's decision must be reversed. In coming to this determination, we note that if the only factor that weighed in Adams' favor was the fact that by entering an *Alford* plea he was maintaining his innocence and was perhaps not guilty, reversal would not be warranted. The fact that a person enters an *Alford* plea does not automatically justify withdrawal of the plea when the request is made. Rather, all *Fish* factors and facts surrounding the plea must be considered and weighed. As aforementioned, the weighing of all the factors warrants reversal in this instance. The sole assignment of error is meritorious.

{¶36} For the foregoing reasons, the judgment of the trial court is reversed, the plea is vacated, and the case is remanded for further proceedings.

Donofrio, J., concurs.
DeGenaro, J., dissents; see dissenting opinion.

APPROVED:

_____
JOSEPH J. VUKOVICH, JUDGE